IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GERALDINE KNIGHT,

　　　　　　　　*Plaintiff,*

　　v.

WOMANSPACE EAST, INC. *and* AARP
FOUNDATION,

　　　　　　　　*Defendants.*

Civil Action No. 2:24-cv-498

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

　　Plaintiff Geraldine Knight ("Knight") brought an action against Defendants Womanspace East, Inc. ("Womanspace") and AARP Foundation ("AARP") alleging disability-based discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et. seq.,* and the Pittsburgh City Code, § 659.02. (ECF No. 1). AARP filed a motion to dismiss. (ECF No. 9). For the following reasons, the motion will be granted and all claims against AARP will be dismissed with prejudice.

### I.　STANDARD OF REVIEW

　　A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and

1

view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint");

*ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Here, AARP has attached several documents to its motion that are docketed at ECF Nos. 9-1 through 9-3 that Knight does not dispute. (*See* ECF No. 13). Therefore, the Court will take these documents into consideration in its adjudication of AARP's motion.

## II.    FACTUAL BACKGROUND

This suit arises out of Knight's employment and subsequent termination from Womanspace – a nonprofit corporation that provides shelter and child development services to families with dependent children. (ECF No. 1, ¶ 6). AARP places employees, like Knight, with employers through the Senior Community Services Employment Program (SCSEP). (*Id.* at ¶ 8). Knight alleges that she was employed by Womanspace through both AARP and the SCSEP as a receptionist from May 22, 2023 through June 21, 2023. (*Id.* at ¶¶ 7, 8, 12).

Knight suffers from several health conditions, including Atrial Fibrillation ("AFib") and anxiety. (ECF No. 1, ¶¶ 10, 11). She communicated to Womanspace that she could not ride elevators due to her anxiety, and that she could only "tolerate going up or down a few steps once per day" due to her AFib. (*Id.* at ¶ 13). According to Knight, walking up and down stairs was not an essential function of her position as a receptionist. (*Id.* at ¶ 14). Knight claims that she was assigned additional tasks beyond the scope of a receptionist's employment description

requiring her to climb several flights of stairs. (*Id.*). She refused to do so and alleges she was subsequently told, "today is your last day; you're fired." (*Id.* at ¶ 15).

On June 29, 2023, Knight contacted AARP to communicate that she had been terminated from Womanspace. (ECF No. 1, ¶ 16). Then, on July 19, 2023, AARP informed Knight that she was being placed on an "approved break" from the SCSEP program. (*Id.* at ¶ 17); (ECF No. 9-1, pp. 1-2). Knight alleges that she did not request or apply for such a break, and that AARP denied the grievance she filed with them by letter dated August 1, 2023. (ECF No. 1, ¶¶ 17, 18). That letter stated in pertinent part:

> It appears there is a fundamental misunderstanding of what AARP Foundation's relationship with [Knight] has entailed. She is not, nor has been, an AARP Foundation employee. Rather she continues her eligibility to participate in a U.S. Department of Labor work training program administered by AARP Foundation, the Senior Community Service Employment Program ("SCSEP")—wherein she is provided training opportunities at various "host agencies" to build skills to aid her on the road to unsubsidized, full-time employment. To that extent, AARP Foundation worked to place her as a "clerical administrator" at Womanspace East. As Womanspace East was responsible for providing her day-to-day training assignments and schedules, to the extent your client feels she was treated unlawfully in those assignments, she should seek redress from that entity. While AARP Foundation explicitly requires host agencies to always honor participant requests for accommodation communicated to us, Ms. Knight did not relay any physical barriers throughout the enrollment and host agency assignment process, despite numerous opportunities to do so. To the extent such a request was later communicated to Womanspace East during her assignments, it was not relayed back to AARP Foundation.

(ECF No. 9-3, p. 1). AARP concluded the letter by reiterating that SCSEP participation "is capped by lifetime durational limits of forty-eight (48) months per participant," and that it placed Knight on a break "so that she didn't lose time against that cap while her next training assignment was found," and that it was "happy to continue" her training and "resume her SCSEP participation." (*Id.* at 2).

### III.    ANALYSIS

Count I of Knight's complaint alleges that AARP discriminated against her by terminating her employment due to her disability within the meaning of the ADA,[1] as amended by the Americans with Disabilities Act Amendments Act ("ADAAA").  (ECF No. 1, pp. 4-5). Knight alleges that she is a qualified person with a disability and could perform the essential functions of her job with or without a reasonable accommodation, that AARP deliberately discriminated against her by terminating her employment due to her disability, and that this termination caused her to suffer damages such as lost income, emotional distress, and humiliation among other things.  (*Id.* at ¶¶ 24, 27, 28).  Critically, Knight alleges that "both defendants" – i.e., Womanspace and AARP – were her employers within the meaning of the ADAAA.  (*Id.* at ¶ 21).  Count II asserts the same substantive allegations that Knight raised in Count I but under the PHRA and Pittsburgh City Code.[2]  (*Id.* at pp. 5-7).  She claims that both AARP and Womanspace were her employers as defined by both the PHRA and Pittsburgh City Code.  (*Id.* at ¶ 31).

---

[1] "Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on disability."  *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3rd Cir. 1998).

[2] The PHRA makes it unlawful for any employer, "because of the . . . disability. . . of any individual or independent contractor, to refuse to hire or employ or contract with, . . . or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."  43 P.S. § 955(a).  Similarly, Section 659.02 of the Pittsburgh City Code prohibits unlawful employment practices based on pregnancy, childbirth, or related medical conditions. Specifically, the Code states that it shall be an unlawful unemployment practice for "any labor organization to discriminate against any person in any way which would deprive or limit his employment opportunities or otherwise adversely affect his status…as an employee with regard to tenure, compensation, promotion discharge or any other terms…because of race, color, religion, ancestry, national origin, place of birth, sex, sexual orientation, age, nonjob related handicap or disability."  § 659.02(h).

The ADA, PHRA, and Pittsburgh City Code are "interpreted consistently with one another, and each has the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citation omitted); *see also Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996) (affirming the district court's treatment of the plaintiff's PHRA claims coextensively with his ADA and ADEA claims, and stating that "its [Pennsylvania's] courts nevertheless generally interpret the PHRA in accord with its federal counterparts"); *see also Kochka v. Allegheny Health Network*, 2:21-CV-01349-CCW, 2023 WL 2216286, at *4 (W.D. Pa. Feb. 24, 2023) (holding that the Court agrees that there is no dispute that discrimination claims arising under the ADEA, PHRA, and Pittsburgh City Code are analyzed coextensively, and that it would analyze the plaintiff's claims under the ADEA framework, without further reference to the PHRA or Pittsburgh City Code.) As such, the Court may apply a single analysis to all of Knight's claims.

The critical question with respect to AARP's motion is whether it was Knight's employer. A plaintiff must allege discrimination against an actual employer to maintain a claim under the ADA, PHRA, and Pittsburgh City Code. The *Enterprise*[3] factors for determining whether a joint-employer relationship exists in the context of the Fair Labor Standards Act ("FLSA") may also be used to determine if AARP was a joint-employer in this case. *See e.g., Shaffer v. Wexford Health Sources, Inc.*, No. 1:17-cv-330, 2018 WL 3388461, at *3 (W.D. Pa. Jul 12, 2018) (reversed on other grounds); *see also Cella v. Villanova Univ.*, No. CIV.A. 01-7181, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003) (applying the *Enterprise* factors to an ADA claim), *aff'd*, 113 F. App'x 454 (3d Cir. 2004). The *Enterprise* factors are: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority

_____

[3] *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).

to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. *In re Enterprise*, 683 F.3d at 469. Importantly, "this list is not exhaustive, and cannot be 'blindly applied' as the sole considerations necessary to determine joint employment." (*Id.* at 469-70).

Knight argues in her opposition to AARP's motion that AARP hired and paid her, assigned her to work at Womanspace, refused to address the discrimination at the workplace, and sought to redirect her to a different workplace. (ECF No. 13, p. 4). Knight argues that the facts alleged in the complaint and the attachments to AARP's motion are sufficiently specific to allow the Court to find a joint employment relationship between AARP and Womanspace. (*Id.* at 3-4).

The Court finds that Knight's allegations in the complaint are threadbare and conclusory. They fall short of satisfying the *Enterprise* elements outlined above. Knight failed to plead sufficient facts showing that AARP had the authority to hire or fire her. She only pled that AARP placed her with Womanspace. Notably, Knight was responsible for informing AARP of her termination, and did so by email dated June 29, 2023. (ECF No. 1, ¶¶ 8, 16). Knight pled no facts to show that AARP, in addition to Womanspace, had the authority to promulgate her work rules, assignments, or conditions of employment; that AARP was involved in her day-to-day supervision or discipline; or that AARP had actual control of Knight's employee records. Such facts do not exist in the complaint.

AARP has explained that it merely administers the SCSEP program, and through the program it provided Knight with a training opportunity at Womanspace to aid her on the road to

unsubsidized, full-time employment. (ECF No. 9-3, p. 1). AARP highlights that other courts have held that serving as a SCSEP administrator does not give rise to an employer relationship between the administrator and the participant. *Guy v. AARP Foundation*, No. 4:19-CV-2117 DDN, 2020 WL999197, at *3 (E.D. Mo. Feb 28, 2020). The *Guy* court noted that "consistent with this congressional intent, numerous federal courts have recognized that participation in SCSEP does not create an employment relationship between participants and SCSEP administrators." (*Id.*) (citing cases). AARP aptly points out that Knight failed to address or refute this argument in her brief in opposition. Thus, the Court holds that Knight has conceded any argument that by serving as a SCSEP administrator, AARP created an employer relationship between itself and Knight. *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 526 n.4 (W.D. Pa. 2021) (stating that failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed). Regardless, the Court agrees with cases holding that participation in a SCSEP program does not create an employment relationship.

Lastly, SCSEP programs are required by federal regulation to place, pay, and reassign participants, as well as keep them advised of their program status. 20 C.F.R. § 641.535(a)(1), (4), and (9). The complaint does allege that AARP placed, reassigned, and advised Knight of her program status. Knight raised in her opposition to AARP's motion that AARP compensated her. The Court holds that these acts alone do not give rise to an employment relationship between AARP and Womanspace or AARP and Knight. (ECF No. 1, ¶¶ 8, 17, 18); (ECF No. 13, p. 3). Although it appears the United States Court of Appeals for the Third Circuit has not yet addressed this, other district and circuit courts have held that legislative history indicates that SCSEP participants should not be considered employees of grantees and national sponsors such

as the AARP. *Henderson v. YMCA*, No. 05-3179, 2006 WL 752792 (C.D. Ill. Mar. 21, 2006) (noting that Courts which have considered the meaning of the term "employee" in legislation substantially similar to SCSEP have held that program participants are not employees of the sponsoring agency); *see also Omeli v. Nat'l Council of Senior Citizens*, 12 Fed. Appx. 304, 307 (6th Cir. 2001). The Court concurs with these courts.

Thus, the Court holds that AARP is not a joint-employer with Womanspace. Knight is unable to bring a disability discrimination claim against AARP under the ADA, PHRA, and the Pittsburgh City Code. It will dismiss Counts I and II with prejudice as to AARP.

Assuming *arguendo* that joint-employer status existed between AARP and Womanspace, the Court further holds that Knight has not pled a viable disability discrimination claim. To state a prima facie claim of disability discrimination under the ADA, PHRA, and the Pittsburgh City Code, Knight must show that she is a "qualified individual" with a "disability" who suffered an adverse employment action "because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citation omitted). Knight fails to satisfy the last element because she alleged no adverse employment action on AARP's part. (ECF No. 9, pp. 3-4).

As noted above, Knight actually had to contact AARP to put them on notice that she had been terminated by Womanspace. (ECF No. 1, ¶ 16). The only adverse action she alleges against AARP is that she received an AARP letter on July 19, 2023, advising her that she was being placed on an "approved break with the SCSEP program." (*Id.* at ¶ 17). However, AARP argues, per 20 C.F.R. § 641.570, that individuals can only be SCSEP program participants for a lifetime maximum of 48 months, and that "authorized breaks" constitute the tolling mechanism against the 48 months. (ECF No. 9, p. 5). Ultimately, AARP's placing of Knight on an approved break was beneficial in that it stopped the clock upon her termination from

Womanspace so that she would not lose future time as a participant in the SCSEP program. In no way was AARP denying Knight assistance to obtain further training opportunities through the SCSEP program. (ECF No. 9-3, p. 2).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant AARP's motion to dismiss. Counts I and II will be dismissed with prejudice as to AARP. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

12/16/24
Date